Alan Harris (SBN 146079)
David Garrett (SBN 160274)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
4771 Cromwell Avenue
Los Angeles, California 90027
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
dgarrett@harrisandruble.com
pmohan@harrisandruble.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERIN SHERMAN and MATT WATSON, individually and on behalf of all others similarly situated; and MARK DAVID CHAMBERS, MIKE THERIAULT, JOEL JOHN RAMIREZ, and JEFF WRIGHT, individually,<br><br>Plaintiffs,<br><br>v.<br><br>CLP RESOURCES, INC., FIRST SOLAR, INC., and DOES 1 to 20,<br><br>Defendants. | Case No. CV 12-8080-GW (PLAx) *consolidated with* Case No. CV 12-11037 GW (PLAx)<br><br>*Assigned to the Honorable George H. Wu*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CLP RESOURCES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  February 3, 2014<br>Time:  8:30 a.m.<br>Courtroom:  10<br>312 North Spring Street<br>Los Angeles, CA 90012 |
| ALLEN HEADLEY, MICHAEL WINGO, and COREY FOUNTAIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CLP RESOURCES, INC., and DOES 1 to 20,<br><br>Defendants. | |

# TABLE OF CONTENTS

**I.  INTRODUCTION** ...................................................................................... 1

**II. STATEMENT OF FACTS** ....................................................................... 5

**III.  ARGUMENT** ........................................................................................ **7**

    **A**.  **The Legal Standard for Summary Adjudication.** .......................... 7

    **B.**  **The Davis-Bacon Act Does Not Preempt California State Wage Law** ....................................................................................... 8

    **C.**  **Even if Davis-Bacon Act Preempted State Law, Defendant CLP Has Presented No Admissible Evidence that Defendant CLP Is Subject to the Act** ................................................................ 14

    **D.**  **The Regular Rate Appears on the Wage Statements** ..................... 18

    **E.**  **Even if the Davis-Bacon Act Applies, CLP Has not Proven It Properly Computed Davis-Bacon Act Overtime** ........................... 20

    **F.**  **CLP Has Not Demonstrated It Is a Davis-Bacon Act Contractor or  Subcontractor** ........................................................ 22

**IV.  CONCLUSION** ................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**

A H Phillips, Inc. v. Walling,
 324 U.S. 490 (1945)...................................................................................11

Adickes v. S.H. Kress & Co.,
 398 U.S. 144 (1970)....................................................................................8

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242 (1986)....................................................................................7

California Div. of Labor Standards Enforcement v. Dillingham Constr.,
 N.A., Inc.,
 519 U.S. 316 (1997)....................................................................................9

California Federal S. & L. Assn. v. Guerra,
 479 U.S. 272 (1987)....................................................................................9

Celotex Corp. v. Catrett,
 477 U.S. 317 (1986)....................................................................................8

Corning Glass Works v. Brennan,
 417 U.S. 188 (1974)..................................................................................11

Fort Halifax Packing Co. v. Coyne,
 482 U.S. 1 (1987)...............................................................................13, 16

Frank Bros. v. Wis. Dep't of Transp.,
 409 F.3d 880 (7th Cir. 2005) ...............................................................11, 12

Industrial Welfare Com. v. Superior Court,
 27 Cal.3d 690 (1980) ................................................................................10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 475 U.S. 574 (1986)....................................................................................7

Medtronic, Inc. v. Lohr,
 518 U.S. 470 (1996)....................................................................................9

N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.
 Co.,
 514 U.S. 645 (1995).................................................................................8, 9

Nordquist v. McGraw–Hill Broadcasting Co.,
 32 Cal. App. 4th 555 (1995) ...............................................................10, 11

Overnite Transp. Co. v. Tianti,
 926 F.2d 220 (2d Cir.1991) ......................................................................10

Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev.
 Comm'n,
 461 U.S. 190 (1983)....................................................................................8

Pacific Merchant Shipping Ass'n v. Aubry,
 918 F.2d 1409 (9th Cir. 1990) ..................................................................10

Pettis Moving Co., Inc. v. Roberts,
 784 F.2d 439 (2d Cir.1986) ......................................................................10

Ramirez v. Yosemite Water Co., Inc.,
 20 Cal. 4th 785 (1999) .............................................................................11

Reyes v. Van Elk, Ltd.,
 148 Cal. App. 4th 604 (2007) ...................................................................13

Rice v. Santa Fe Elevator Corp.,
331 U.S. 218 (1947)...........................................................................................9

Robinson v. Magee,
9 Cal. 81 (1858) ..............................................................................................23

Rush Prudential HMO v. Moran,
536 U.S. 355 (2002)...........................................................................................9

Siuslaw Concrete Construction Co. v. State of Washington,
784 F.2d 952 (9th Cir. 1986) ...........................................................................11

Tidewater Marine W., Inc. v. Bradshaw,
14 Cal. 4th 557 (1996) ..................................................................................9, 10

United States v. Binghamton Const. Co.,
347 U.S. 171 (1954)......................................................................................13, 14

Walling v. Youngerman-Reynolds Hardwood Co.,
325 U.S. 419 (1945)..........................................................................................20

Warren v. City of Carlsbad,
58 F.3d 439(9th Cir.1995) ..................................................................................7

Whistler Invs., Inc. v. Depository Trust and Clearing Corp.,
539 F.3d 1159 (9th Cir.2008) ...........................................................................12

Williams v. W.M.A. Transit Company,
472 F.2d 1258 (D.C.Cir.1972).........................................................................10

**STATUTES**

U.S. Const., art. VI............................................................................................8

29 U.S.C. § 201 et seq........................................................................................1

29 U.S.C. § 207(1), (2).....................................................................................18

29 U.S.C. § 207(e) ...........................................................................................18

29 U.S.C. § 207(e)(1)-(8)..................................................................................19

29 U.S.C. § 216(b) .............................................................................................2

29 U.S.C. § 218(a) .............................................................................................9

29 U.S.C. §§ 206 and 207 ..................................................................................1

40 U.S.C. § 3142 (c) (1)-(3)...............................................................................5

40 U.S.C. § 3142 (c)(2).......................................................................................4

40 U.S.C.A. § 3142(a) ...................................................................4, 12, 14, 22

Cal. Civ. Code § 1549.......................................................................................23

Cal. Lab. Code §226(a)(2) ...............................................................................23

Cal. Lab. Code §226(a)(9) ............................................................................7, 8

Cal. Lab. Code §226(e)(2)(B)......................................................................8, 23

Cal. Lab. Code § 510 (a)...................................................................................18

Cal. Lab. Code § 1194 ...................................................................................1, 2

Cal. Lab. Code § 1194(a) ...............................................................................1,3

Cal. Lab. Code § 1194.2 ................................................................................2, 3

**RULES**

Fed. R. Civ. Proc. 56(d) ...............................................................................................23

Fed. R. Civ. Proc. 56(g) ...........................................................................................8, 23

Fed. R. Evid. 1002 ..................................................................................................6, 22

Fed. R. Evid. 1004 .......................................................................................................7

**REGULATIONS**

29 CFR §5.2(h) ..........................................................................................................16

29 CFR §5.2(h) .....................................................................................................14, 22

29 CFR §5.32 .............................................................................................................21

29 CFR §5.32(c)(1) ...............................................................................................21, 22

29 CFR §5.32(c)(2) .....................................................................................................22

29 CFR §5.5(a).......................................................................................................14, 22

29 C.F.R. § 778.108 ....................................................................................................20

29 C.F.R. § 778.110(a)................................................................................................20

29 C.F.R. § 778.200(c)................................................................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The CLP Resources, Inc.'s ("CLP") Motion for Partial Summary Judgment (the "Motion") is without merit and must be denied.  CLP misconstrues the pleadings and misstates the law.  First, Plaintiffs have alleged a claim for unpaid overtime wages.  The Second Amended Complaint is clear:

1.    This is a civil action seeking unpaid . . . overtime . . .

. . .

21.    At all times mentioned herein, California Labor Code section 1194 provided, in relevant part:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194(a).

. . .

25.    Similarly, at all times relevant hereto, the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. require the payment of at least minimum wage and overtime for hours worked over forty in a workweek.  See 29 U.S.C. §§ 206 and 207.

. . .

31.    To date, Defendants have failed to compensate Plaintiffs for all of their earned wages in accordance with the California Labor Code, IWC Wage Order 16, and/or the FLSA.

. . .

61.    Defendants CLP and FSI intentionally and improperly failed to pay

Plaintiff and Collective Action Members minimum wage and/or overtime compensation to which they are entitled. . . .

. . .

**WHEREFORE**, Plaintiffs pray for judgment as follows:

. . .

2.    That, with respect to the First Claim for Relief, this Court enter judgment in favor of Plaintiffs for payment of their unpaid overtime, interest thereon, liquidated damages, reasonable attorneys' fees and costs of suit, according to proof, in accordance with sections 1194(a) and 1194.2 of the California Labor Code, against Defendant CLP.

. . .

6.    That, with respect to the Fifth Claim for Relief, Plaintiffs and Collective Action Members be awarded their unpaid minimum wage and/or overtime compensation, liquidated damages, and attorneys' fees and costs, according to proof, pursuant to 29 U.S.C. § 216(b), against Defendants CLP and FSI.

Sherman, Second Amended Complaint, ¶¶ 1, 21, 25, 31, 61 and Prayer for Relief, ¶¶ 2 and 6 (Document --).  Similarly, in the Headley complaint, Plaintiffs assert:

1.    This is a civil action seeking . . . unpaid overtime . . .

. . .

15.    At all relevant times mentioned herein, California Labor Code section 1194 provided, in relevant part:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194(a).

. . .

25.     To date, Defendant has failed to compensate Plaintiffs and the Class for all of their earned wages in accordance with the California Labor Code and IWC Wage Order 16.

. . .

**WHEREFORE**, Plaintiffs pray for judgment as follows:

. . .

2.     That, with respect to the First Cause of Action, this Court enter judgment in favor of Plaintiffs and the Class for payment of their unpaid minimum wage and/or overtime, interest thereon, liquidated damages, reasonable attorneys' fees and costs of suit, according to proof, in accordance with sections 1194(a) and 1194.2 of the California Labor Code, against Defendant CLP.

Headley, Second Amended Complaint, ¶¶ 1 and 25, and Prayer for Relief, ¶ 2 (Doc. No. 105).

In neither the Answer to the Sherman Second Amended Complaint nor in the Answer to the Headley Second Amended Complaint did CLP (or, for that matter, First Solar) raise the Davis-Bacon Act as an affirmative defense or any defense, at all. Compare, January 24, 2013 Defendant CLP Resources, Inc.'s Answer to Second Amended Complaint (Document 30), with January 24, 2013 Defendant First Solar, Inc.'s Answer to Second Amended Complaint (Document 31).  In its initial disclosures, CLP has failed to disclose Carole Jones, an employee of third-party Trueblue, Inc., as a witness.  For that matter, neither TrueBlue, Inc. nor any of its employees have been identified as a witness.  (Plaintiffs' Separate Statement ("PSS") ¶ 35, Harris Decl., ¶ 15). None of the documents referred to in the CLP Request for Judicial Notice (Document 118-5) is identified in the CLP Initial Disclosures.  (PSS ¶ 36, Harris Decl., ¶ 15). Similarly, the document Ms. Jones describes as a "wage determination sheet, issued by

PLS.' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT CV12-8080 GW

the Secretary of Labor," has not been identified in the CLP Initial Disclosures. (PSS ¶ 37, Harris Decl., ¶ 15).  Indeed, although the Davis-Bacon Act specifically requires that "the contractor will post the scale of wages to be paid in a prominent and easily accessible place at the site of the work," 40 U.S.C. § 3142 (c)(2), neither any such document nor the actual contract required by the Davis-Bacon Act has been identified or produced in this case.  (PSS ¶ 38, Harris Decl., ¶ 15).

Rather than disclosing and producing actual contracts between an agency of the federal government and CLP (or any other entity or person), CLP makes the obviously incorrect claim that the Davis-Bacon Act "governs prevailing wage jobsites, including AVSR1." (Def. Mem., 2: 19-20, 2:24-3:1.)  However, according to the Davis-Bacon Act:

> The advertised specifications for every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings and public works of the Government or the District of Columbia that are located in a State or the District of Columbia and which requires or involves the employment of mechanics or laborers shall contain a provision stating the *minimum* wages to be paid various classes of laborers and mechanics.

40 U.S.C.A. § 3142(a)(emphasis in italics—obviously, the Davis-Bacon Act was intended to protect employees rather than to impose caps on their wages and the Act cannot be read to impose a cap on overtime payments).

Of course, neither the advertised specifications nor the resulting contract[s] have been either identified or produced in this case. Under the Davis-Bacon Act:

> (1) the contractor or subcontractor shall pay all mechanics and laborers employed directly on the site of the work, unconditionally and at least once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual

PLS.' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT CV12-8080 GW

relationship which may be alleged to exist between the contractor or subcontractor and the laborers and mechanics;

(2) the contractor will post the scale of wages to be paid in a prominent and easily accessible place at the site of the work; and

(3) there may be withheld from the contractor so much of accrued payments as the contracting officer considers necessary to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by the laborers and mechanics and not refunded to the contractor or subcontractors or their agents.

40 U.S.C. § 3142 (c) (1)-(3).

In reality, of course, the defense claim that the "jobsite AVSR1 is funded by the United States Department of Energy through the Section 1705 Loan Program" cannot be true, since the DOE program only makes loans to persons or entities, not to "jobsites." Similarly, the Davis-Bacon Act does not "govern prevailing wage jobsites," but, rather, it may govern the actions of certain employers with respect to minimum wages paid to certain individuals working at specific jobsites.[1]

## II.   STATEMENT OF FACTS

When working at AVSR1, Plaintiffs were at times forced to work off the clock, and for those hours were not paid any overtime wage, or any wage, at all.  PSS, ¶ 21-25. At other times, they were paid overtime wages at less than the proper time and a half rates required by state and federal law, as well as required by the CLP Field Employee

---

[1] Perhaps the most perplexing aspect of the defense motion is that it is directed to two matters regarding which the Court has been advised are subject to a settlement.  Compare, with respect to the second claim for relief in Headley and the eighth claim for relief in Sherman, Plaintiffs' August 28, 2013 Clarification re Partial Settlement (Document 88), with Defendant CLP Resources, Inc.'s Notice of and Motion for Partial Summary Judgment as to Each of Plaintiffs' Claims, or Portions of Claims, that Rely on or Are Predicated on Plaintiffs' Assertion that CLP Miscomputed Overtime ("Def. Mem."), 5:26-6:2.  Since, however, the parties have been unable to document their settlement efforts, it may be that the defense is now repudiating the agreement.

Handbook, which Handbook directly promises that "overtime pay is figured at 1 ½ times your regular hourly wage." PSS, ¶¶ 26-30; Harris Decl. ¶ 1, Ex. 1. The wage statements are all in identical format, listing "Regular Hours" worked, "Regular [straight time] Earnings" and a regular wage Rate that is used as the multiplicand to compute the Regular Earnings. Compare, Jones Declaration, Exhibit B (Watson Wage Statements), with Exhibit C (Sherman Wage Statement), Exhibit D (Headley Wage Statement), and Exhibit E (Wingo Wage Statements).[2] The defense claim that the Rate it used to compute "Regular Earnings" as the multiplicand for "Regular Hours" is not the "Regular Rate" seems disingenuous. (Def. Mem. 1:17-22, 2:24-3:1, 3:8-10). Plaintiffs were all provided the CLP Employee Handbook, and each was promised that their overtime pay would be "figured at 1 ½ times your regular hourly wage." PSS, ¶ 30; Harris Decl. Ex. 4 (Sherman testimony [received Handbook, 23:22-24:6, containing "the employee handbook had the rules that would govern . . . employment with CLP" 25:23-26:5.)

Of great significance is the peculiar defense claim that "the Davis-Bacon Act . . . governs prevailing wage jobsites, including AVSR1" and the simultaneous CLP failure to produce any of the relevant contracts between the federal government and the parties. PSS, ¶¶ 35-38. Of course, as a starting point, Rule 1002 of the Federal Rules of Evidence requires production of the actual contracts indicating that employees of CLP working at the AVSR1 site, during the relevant time, are governed by the Davis-Bacon

---

[2] The Jones Declaration attaches, as Exhibit F, some of Plaintiff Fountain's wage statements issued to him in connection with services at another site, Alpine. Mr. Fountain does not contend that he was required to work off the clock at Alpine, or that his overtime wages were miscomputed for work done at that facility. He does contend, inter alia, that "[o]n occasion, I put in overtime, but CLP wage statements never told me my overtime rate or the inclusive dates of the pay period at issue in any given wage statement, whether I was working at AVSR1 or at Alpine" and that "[w]hen I commenced working for CLP and FSI, at morning muster meetings my superiors at the AVSR1 job site, including John Hanlin and Kevin Tidwell, told me (and other Field Employees attending the morning muster meetings) to appear for work at least 15 minutes prior to the 7:00 a.m. formal commencement of the shift. . . . After I stopped working for Defendants, I did not receive any additional compensation to make up for the 'short' payment of overtime wages or the off-the-clock work described herein." PSS ¶ 25, July 5, 2013 Fountain Declaration in Support of Plaintiffs' Motion for Certification and Summary Adjudication, ¶¶ 3 and 6. In other words, at a minimum, Fountain and the other Plaintiffs wish their off the clock work, performed when working off the clock prior to a full eight-hour shift, to be compensated at an overtime rate, established by multiplying the regular rate set forth on their wage statements by 1.5 and the number of off the clock hours deemed owing to them.

PLS.' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT CV12-8080 GW

Act.  ("[A] n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise" --  a party seeking to prove the content of a writing must introduce the original or a duplicate of the original, unless it is established that (1) all originals have been lost or destroyed (absent bad faith by the proponent); (2) the original cannot be obtained; (3) the original is in the possession of an opposing party who refuses to produce it; or (4) the writing is not closely related to a controlling issue. Rule 1004, Federal Rules of Evidence).  As we shall see, even if such contracts exist, the Davis-Bacon Act does not preempt state labor protections, including the state law requirement that individuals who work in excess of eight hours per day be paid overtime wages, a law setting daily overtime requirements, a matter not even addressed by the FLSA.  Since the evidence is that the Plaintiffs consistently worked over eight hours per day, without any overtime being paid, it is clear that the overtime rate to which they are entitled should be computed by multiplying their regular hourly Rate as reported on their wage statements by 1.5.  PSS, ¶¶ 21-25.   California law plainly requires an employer to disclose "all applicable hourly rates in effect during the pay period " on the wage statements.  Cal. Lab. Code §226(a)(9).  The defense should be estopped to seek summary judgment on the theory that the wage rates it displayed on its wage statements were anything other than the "regular rate," the "applicable hourly rate[] in effect during the pay period."

## III.   ARGUMENT

### A.   The Legal Standard for Summary Adjudication

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show

initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). If the moving party makes this showing, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324. Here, CLP cannot even make an initial showing that the Davis-Bacon Act has any application to this case, much less that it preempts state overtime legislation, and the motion must be denied.

Of course, "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief --that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. Proc. 56(g). Here, the only material facts which may be deemed established by the defense motion is that CLP has failed to include "all applicable hourly rates in effect during the pay period" on its wage statements issued to its AVSR1 employees, as required by Cal. Lab. Code §226(a)(9), and that the correct information may not be "promptly and easily determine[d] from the wage statement alone," as required by Cal. Lab. Code §226(e)(2)(B).

**B.      The Davis-Bacon Act Does Not Preempt California State Wage Law**

Under the Supremacy Clause of the United States Constitution, U.S. Const., art. VI, state law may be preempted by federal legislation either by "express provision, by implication, or by a conflict between federal and state law." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995) (citing Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n, 461 U.S. 190, 203–04 (1983)). Although state legislation may be preempted by federal provisions in a number of ways, the Courts presume, "Congress does not intend to supplant state law." New York State Conf. of Blue Cross & Blue Shield Plans v.

Travelers Ins. Co., 514 U.S. 645, 654 (1995).  This is particularly true where a party claims that federal law bars state action in areas of traditional state regulation, such as labor law or public works.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996); see also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325 (1997). In such cases preemption shall not be found absent evidence that it was Congress' "clear and manifest purpose [to do so]." Rush Prudential HMO v. Moran, 536 U.S. 355, 365 (2002); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).

The issue was thoroughly analyzed in Tidewater Marine W., Inc. v. Bradshaw, 14 Cal. 4th 557 (1996):

> In determining whether federal law preempts state law, "our sole task is to ascertain the intent of Congress." (*California Federal S. & L. Assn. v. Guerra* (1987) 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (*Guerra* ).) Moreover, this intent must be "clear and manifest." (*Rice v. Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447.) Preemption may occur in three situations: (1) where the federal law expressly so states, (2) where the federal law is so comprehensive that it leaves " 'no room' for supplementary state regulation," or (3) where the federal and state laws "actually conflict [ ]." (*Guerra, supra,* 479 U.S. at pp. 280–281, 107 S.Ct. at p. 689.)
>
> Here, not only does the FLSA leave "room" for supplementary state regulation of overtime, the FLSA expressly indicates that it does *not* preempt this regulation. The FLSA includes a "savings clause," which provides: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law or municipal ordinance establishing . . . a maximum workweek lower than the maximum workweek established under this chapter. . . . " (29 U.S.C. § 218(a).) The federal courts that have addressed this question have interpreted this savings clause as

PLS.' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT CV12-8080 GW

expressly permitting states to regulate overtime wages. (See, e.g., *Overnite Transp. Co. v. Tianti* (2d Cir.1991) 926 F.2d 220, 222 ["state overtime wage law is not preempted by . . . the FLSA"]; *Pacific Merchant Shipping Ass'n v. Aubry, supra,* 918 F.2d at p. 1422 ["Congress has specifically allowed states to enforce overtime laws more generous than the FLSA," citing the savings clause]; *Pettis Moving Co., Inc. v. Roberts* (2d Cir.1986) 784 F.2d 439, 441 [savings clause "explicitly permits states to set more stringent overtime provisions than the FLSA"]; and *Williams v. W.M.A. Transit Company* (D.C.Cir.1972) 472 F.2d 1258, 1261 [savings clause "permits state laws to operate even as to workers exempt from FLSA"].)

Moreover, no provision of the FLSA "actually conflicts" with California law. The FLSA does not expressly preclude states from regulating the overtime wages of seamen, and the legislative history of the FLSA does not suggest an implicit preclusion.

Tidewater Marine W., Inc. v. Bradshaw, 14 Cal. 4th 557, 567-68 (1996).

Shortly after Tidewater, the California Supreme Court again addressed issues pertinent here:

In interpreting the scope of an exemption from the state's overtime laws, we begin by reviewing certain basic principles. First, "past decisions . . . teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702, 166 Cal.Rptr. 331, 613 P.2d 579.) Thus, under California law, exemptions from statutory mandatory overtime provisions are narrowly construed. (*Nordquist v. McGraw–Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221; see also *A H Phillips, Inc. v. Walling* (1945) 324 U.S. 490, 493, 65 S.Ct. 807, 89

L.Ed. 1095.) Moreover, the assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption. (*Nordquist, supra,* 32 Cal.App.4th at p. 562, 38 Cal.Rptr.2d 221; *Corning Glass Works v. Brennan* (1974) 417 U.S. 188, 196–197, 94 S.Ct. 2223, 41 L.Ed.2d 1.)

Ramirez v. Yosemite Water Co., Inc., 20 Cal. 4th 785, 794-95 (1999).

Defendants have ignored applicable case law and regulations by incorrectly asserting that the Davis-Bacon Act implicitly preempts state law with regard to payroll, wage and overtime requirements. In fact, applicable case law, federal regulations and the legislative history all establish that the Davis-Bacon Act is not intended to preempt state law in this area. In Siuslaw Concrete Construction Co. v. State of Washington, 784 F.2d 952 (9th Cir. 1986), the Ninth Circuit held that there is there is "no express statement of congressional intent to preempt state laws" in the Davis-Bacon Act. Siuslaw, 784 F.2d at 955. Further, the Court held that a state minimum wage rate on federally funded highway construction project higher than that for which provision was made under federal statutes and regulations was not an obstacle to the accomplishment of federal purposes so as to render the state statute unconstitutional or preempted by federal laws and regulations. Id. at 959.

Frank Bros. v. Wis. Dep't of Transp., 409 F.3d 880, 891 (7th Cir. 2005), held that the Davis-Bacon Act did not implicitly preempt application of state's prevailing wage law. The Frank Court holds that there is nothing in the Davis-Bacon Act that specifically or expressly prohibits paying workers a higher wage than that required by the Davis-Bacon Act, and it was possible for a contractor to comply with state and federal requirements simultaneously:

This is an area of traditional state regulation and as such the State of Wisconsin is free to set whatever wage it likes for whatever category of worker it considers worthy, as long as that regulation does not enter into a field occupied by federal legislation and does not conflict with that

legislation. We conclude that federal law does not prohibit Frank Bros. from paying the State's prevailing wage to truck drivers, and thus it is not 'physically impossible' for them to comply with both federal and state law in this instance.

Frank Bros., 409 F.3d at 897 (7th Cir. 2005).  Obviously, regulation of wages is a traditional area of state regulation and, since the Davis-Bacon Act merely sets minimum wage rates, construing California law to require higher overtime rates that those for which provision is made by the Davis-Bacon Act does not interfere with one's compliance with the Act.  The statutory language of the Davis-Bacon Act clearly "suggest[s] that Congress intended federal law to be complementary to, rather than preclusive of, state law."  Frank, 409 F.3d at 887.   Further:

If Congress had intended to supplant more stringent state legislation it is unlikely that they would have characterized the federal prevailing wage as the minimum wages to be paid various classes of laborers and mechanics. 40 U.S.C. § 3142(a) (emphasis added)  The use of the word minimum in the statute, in and of itself, is strong evidence of a congressional intention to have the statute read as complementary to state legislation. There is no doubt that congressional lawmakers were aware of their inherent authority to legislatively preempt state authority in the field by making the federal wage rate mandatory and preclusive of state (or employer) supplementation, however, the text of the statute itself establishes that they chose not to do so.

Id.

The cases relied on by Defendant to support its preemption argument have nothing to do with the Davis-Bacon Act.  Instead, they are general preemption cases which apply only when a party's compliance with both federal and state requirements is impossible. See Whistler Invs., Inc. v. Depository Trust and Clearing Corp., 539 F.3d 1159, 1166 (9th Cir. 2008).   Of crucial import is recognition that the Davis-Bacon Act was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by

fixing floors under wages on government-funded projects. <u>United States v. Binghamton Const. Co.</u>, 347 U.S. 171, 177 (1954). The United States Supreme Court held that the establishment of prevailing wage rates and labor standards for indigenous workers is an area of traditional state regulation. <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 21 (1987).

Federal statutes cannot be utilized by contractors to avoid compliance with state wage laws. In California, courts have held that because legislation providing for the payment of prevailing wages comes under the historic police powers of the state, absent a contrary intention expressed in a federal statute, the presumption is that such legislation is not superseded. <u>Reyes v. Van Elk, Ltd.</u>, 148 Cal. App. 4th 604, 616 (2007). Absent such an express statement preempting state prevailing wage requirements, whenever federally funded or assisted projects are controlled or carried out by California awarding bodies of any sort, California prevailing wage rates, when higher, must be applied. PSS ¶39, Harris Decl., Ex. 10, reproducing 8 C.C.R. § 16001(b) ("Federally Funded or Assisted Projects. The application of state prevailing wage rates when higher is required whenever federally funded or assisted projects are controlled or carried out by California awarding bodies of any sort.")

Further, Federal Guidelines issued for Davis-Bacon contractors specifically state that "Contractors on projects subject to DBRA labor standards may also be subject to additional prevailing wage and overtime pay requirements under State (and local) laws. Also, overtime work pay requirements under . . . the Fair Labor Standards Act may apply." PSS ¶40, Harris Decl., Ex. 13, reproducing Fact Sheet #66, US Department of Labor, April 2009, Wage and Hour Division, supra note 3, at page 2. While the Davis-Bacon Act requires a contractor to pay not less than the prevailing wage rate established by the Department of Labor, it does not guarantee that the contractor will not have to pay more. PSS ¶41, Harris Decl., Ex. 14, California Department of Energy, Davis-Bacon Act Prevailing Wage Law Compliance and Certification Form.

The California Energy Commission has also warned contractors that while federal

prevailing wage requirements under the Davis-Bacon Act broadly apply to construction projects funded with ARRA (American Recovery and Reinvestment Act of 2009) appropriations, neither ARRA nor the Davis-Bacon Act expressly preempt state prevailing wage requirements. Thus, recipients must apply California prevailing wage rates, when higher, to all projects completed under the Energy Commission's ARRA funded programs.[3] The Davis-Bacon Act "does not supersede or impair any authority otherwise granted by federal law to provide for the establishment of specific wages."[4]

## C. Even if Davis-Bacon Act Preempted State Law, Defendant CLP Has Presented No Admissible Evidence that Defendant CLP Is Subject to the Act

Defendant CLP asserts the unsupported legal conclusion that it is subject to some "safe haven" under the Davis-Bacon Act that allows it to avoid state overtime and payroll laws. As stated earlier, the Davis–Bacon Act was not enacted to benefit contractors, but rather to protect their employees. United States v. Binghamton Const. Co., 347 U.S. 171, 177 (1954). Further, Defendant has provided no any admissible evidence that it is a contractor or subcontractor that is subject to the provisions of the Davis-Bacon Act.

Under the Davis-Bacon Act, certain contracts in which the Federal Government or District of Columbia is a party "for construction, alteration, or repair, including painting and decorating of public buildings or public works of the Government," which require or involve the employment of laborers or mechanics, must contain a provision stating the minimum wages to be paid to various classes of laborers and mechanics. See 40 U.S.C. § 3142 (a). The Davis-Bacon Act covers "contractors" and "subcontractors" involved in such construction. 29 CFR §5.2 (h) and §5.5 (a).

However, Defendant CLP has provided no contract, agreement or documentation

---

[3] PSS ¶42, Harris Decl., Ex. 14, reproducing California Energy Commission Report on Davis-Bacon Act Prevailing Wages.

[4] PSS ¶43, Harris Decl., Ex. 12, reproducing Advisory Letter to Chris Henderson, Sr. Advisor, Office of Secretary, US Department of the Interior, from Timothy J. Helm, Chief, Branch of Government Contracts Enforcement, Office of Enforcement Policy, U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division, May 29, 2009, page 3.

proving that it is either a "contractor" or "subcontractor" that is subject to the Davis-Bacon Act. The purported websites provided by Defendant are generic websites with cartoon characters that tout the "1705 Loan Program", "Exelon" and the "Antelope Valley Solar Ranch." The websites submitted by Defendant CPL are neither judicially noticeable nor proof of the alleged "fact" that Defendant CPL is a "contractor" or "subcontractor" operating under the Davis-Bacon Act. In fact, Defendant CLP is not referenced at all in the websites, and no documentation has been provided indicating that CLP is at all subject to any provisions of the Davis-Bacon Act. Defendant CLP has not even alleged that it is a "contractor" or "subcontractor" on a Davis-Bacon Act project. Accordingly, on its face, Defendant CLP has no standing to assert that it is or ever was operating under the provisions of the Davis-Bacon Act, and its effort to mount an affirmative defense based on the Act falls flat.

The testimony provided in the Declaration of Carole Jones ("Jones") regarding Defendant CLP allegedly operating under the Davis-Bacon Act is inadmissible hearsay and irrelevant speculation. As noted in Plaintiff's Request for Evidentiary Rulings on Specified Objections, Declarant Jones states that she has worked for an entity called TrueBlue, Inc., since April, 2011. Jones Decl., 3: 5-7. Jones is not employed by Defendant CLP and makes no effort to lay a proper foundation that she has personal knowledge of the facts within her declaration. There is no explanation provided as to how she would have any personal knowledge regarding a CLP project from two years ago, and specifically AVSR1. There is no indication that Declarant Jones had any involvement with Defendant CLP during the months of work at issue in this case.

Declarant Jones' testimony regarding the preparation of the payroll records in question is inadmissible. Jones states that she has worked for TrueBlue, Inc. since April, 2011, but does not state that she oversaw the preparation of the payroll records attached to her declaration, indicating only that she is "currently" a "Prevailing Wage Supervisor." Jones Decl., 3: 5-7. She does even state that she oversaw or supervised the workers who prepared the payroll records at the time they were prepared. In fact, Declarant Jones

simply states that in her "current position" she "supervises[s]" and "oversee[s]" the prevailing wage processors, including those processing certified payrolls for CLP's prevailing wage jobsites." Jones Decl., 3:13-15. However, Declarant Jones does not declare that she supervised and oversaw the processors of the payroll statements during the period from 2011 to mid-2013 when one or more of the Plaintiffs worked for CLP. She merely states that presently, nearly two years after most of the payroll statements were issued, she supervises wage processors for Defendant CLP. Thus, Declarant Jones has no personal knowledge of the events in question and is in no position to testify as to the status of Plaintiffs' employment or whether Defendant CLP was subject to the provisions of the Davis-Bacon Act during the dates in question.

Defendant CLP states without providing any admissible supporting evidence that "The jobsite AVSRI *is* funded by the United States Department of Energy through the Section 1705 Loan Program, and, as mandated by the program, the Davis-Bacon Act governs the payment of prevailing wages to workers working on site." Def. Mem., 6:5-7 (emphasis added). Defendant CLP further states without providing any admissible supporting evidence that "[s]ince the AVSRI jobsite is governed by the Davis-Bacon Act, CLP may elect to provide benefits (such as health insurance and vacation) to employees, or pay an equivalent of those benefits in an hourly cash fringe benefit payment." Id. 6:9-11.

Both of these assertions of fact are disputed. Defendant CLP has provided no contracts or agreements indicating the relationship between CLP, First Solar, True Blue, Inc. and AVSR1. Defendant CLP states that First Solar is "a customer" of CLP Resources, but has provided no documentation indicating (much less proving) that Defendant CLP is a "contractor" or "subcontractor" operating under the Davis-Bacon Act. See 29 CFR §5.2 (h) ("[t]he term *contract* means any prime contract which is subject wholly or in part to the labor standards provisions of any of the acts listed in §5.1 and any subcontract of any tier thereunder, let under the prime contract") and §5.5 (a) ("[t]he Agency head shall cause or require the contracting officer to insert in full in any

contract in excess of $2,000 which is entered into for the actual construction, alteration and/or repair, including painting and decorating, of a public building or public work, or building or work financed in whole or in part from Federal funds or in accordance with guarantees of a Federal agency or financed from funds obtained by pledge of any contract of a Federal agency to make a loan, grant or annual contribution (except where a different meaning is expressly indicated), and which is subject to the labor standards provisions of any of the acts listed in §5.1, the following clauses . . . (1) *Minimum wages. . . . "*). Clearly, the United States Government requires written documentation from a company in order to be eligible to take advantage of its loan program.  Yet, Defendant has provided no written documentation whatsoever to support its implicit contention that it is a qualified Davis-Bacon Act contractor or subcontractor.

All of the purported testimony of the Plaintiffs which is provided by Defendant through the Declaration of David Ongaro lacks foundation and/or is inadmissible as hearsay.  None of the Plaintiffs state that they have personal knowledge of Defendant CLP's contractual relations with the government or any other entity.  They are merely repeating general statements that were supposedly communicated to them by some unidentified persons on the job site.[5]  None of the testimony marked by Defendant even references Defendant CLP or the Davis-Bacon Act.  The highlighted testimony makes reference to "prevailing wages" and "federal funding", but there is absolutely no admissible proof even offered that Defendant CLP is a contractor or subcontractor operating pursuant to the Davis-Bacon Act.

For example, Mr. Watson testified as follows in response to defense questions:

Q . . . you knew when you were working in August of 2012 that your regular rate was $42.33 an hour, correct?

A  Correct.

Q  It says so on the wage statement under the column 'Rate' correct?

---

[5] For example, Declarant Jerin Sherman states that he was told that AVSR1 was "federal job" by some unnamed supervisors. (Ongaro Decl., Exhibit C, 255:3-6).

PLS.' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT CV12-8080 GW

A  Correct.

. . .

A  I was told that the hourly rate was comprised of base rate plus a fringe benefit to come up with the total hourly rate.

Ongaro Decl., Exhibit A, 154:15-21, 157:7-9.  Similarly, Mr. Fountain testified that "I just knew it was a prevailing wage job and I guess it was – not company, but like a government-paid job."  Ongaro Decl., Exhibit D, 67:4-6.  None of the foregoing or similar "evidence" can be cited to proved whether or not in fact CLP was a Davis-Bacon Act contractor during the time of Plaintiffs' employ by the Defendant.  At the very least, there is genuine issue of fact as to whether Defendant CLP is a contractor or subcontractor which was subject to the Davis-Bacon Act.

**D.     The Regular Rate Appears on the Wage Statements**

Under state and federal law, overtime compensation is based on an employee's "regular rate." See Lab.Code, § 510, subd. (a); 29 U.S.C. § 207(1), (2).   More specifically, California Labor Code section 510, subdivision (a) provides, as relevant here, an employee is entitled to overtime pay at one and one-half times the "regular rate" for work in excess of eight hours in one day and twice the "regular rate" for work in excess of 12 hours in one day.

In the FLSA, the "regular rate" is defined as "all remuneration for employment paid to, or on behalf of, the employee. . . . " 29 U.S.C. § 207(e).  The funds paid to the Plaintiffs, as reflected on their wage statements, constitute their "remuneration for employment."   The FLSA excludes several types of remuneration from the regular rate. Among the statutory exclusions are, in very basic terms: (1) gifts on special occasions; (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, or lack of work; (3) payments made for traveling expenses; (4) bonuses that are not promised and are determined in the employer's sole discretion as to the fact and amount of payment; (5) payments made pursuant to a bona fide profit-sharing plan; (6) contributions irrevocably made to a trustee or third person pursuant to a bona fide

plan for providing old-age, retirement, life, accident, or health insurance; (7) extra compensation for working in excess of eight hours in one day or in excess of the employee's normal working hours; (8) extra compensation for working on Saturdays, Sundays, holidays, or regular days of rest; (9) extra compensation paid pursuant to an applicable employment contract or collective bargaining agreement for work outside the hours established in good faith by the contract or agreement as the basic, normal, or regular workday; and (10) any value or income derived from grants or rights provided by the employer pursuant to a stock option or a bona fide employee stock purchase program. 29 U.S.C. § 207(e)(1)-(8).  The Code of Federal Regulations states that, in determining the regular rate, "[o]nly the statutory exclusions are authorized. It is important to determine the scope of these exclusions, since all remuneration for employment paid to employees which does not fall within one of these  . . . exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined." 29 C.F.R. § 778.200(c) (2004), italics omitted.

The Supreme Court has explained:

[T]he regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed. . . . As long as the minimum hourly rates . . . are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit. They may agree to pay compensation according to any time or work measurement they desire. . . . 'But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes.' . . . The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical

computation, the result of which is unaffected by any designation of a contrary 'regular rate' in [a] wage contract[ ]."

Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424-25 (1945) (citations omitted, italics added, quoted with approval in 29 C.F.R. § 778.108 (2004).)  "If the employee is employed solely on the basis of a single hourly rate, the hourly rate is his 'regular rate.' " 29 C.F.R. § 778.110(a) (2004).

**E.**     **Even if the Davis-Bacon Act Applies, CLP Has not Proven It Properly Computed Davis-Bacon Act Overtime**

Defendant's labored efforts to explain away the discrepancies in Plaintiffs paystubs demonstrates that there are many genuine issues as to material facts in the overtime causes of action.  The pages of computations laid out by Defendant CLP are based on inadmissible evidence, and cannot be used as a basis for the Motion for Partial Summary Judgment.

First, the alleged "prevailing wage determination sheet" attached as Exhibit A to the Declaration of Carole Jones is inadmissible because there has been no foundation laid for its admission.  If this is an official government document, it should be certified or at least authenticated by a government official or other appropriate witness.  The document refers to Los Angeles County, but does not indicate that it was to be used for the AVSR1 jobsite.  There is no indication on the document that it was in any way applicable to the AVSR1 jobsite or Defendant CLP.  (Jones Decl. Exhibit A:1).

Most importantly, on its face, the document indicates it unreliability for calculating wages and overtime over the periods in question from and after September of 2011.  The document indicates that it was modified 35 times, at least once a month, and up to 3 times a month, between March 12, 2010 and September 16, 2011.  (Id.)  The defense has not produced the United States Department of Labor General Wage Decisions for the relevant period, such as one attached to the Harris Declaration, filed herewith, indicating an increase in the allegedly applicable wage rates.  PSS ¶ 44.  Compare, Jones Declaraton, Ex. A to Harris Declaration, Ex. 9.  It may be convenient for Defendant CLP

to utilize the Jones Declaration exhibit for its analysis, but based on review, the General Wage Decision to which she refers was routinely modified thereafter and there is no basis for using Jones Exhibit A to conduct any analysis in this case.  PSS ¶ 45, Harris Decl. Ex. 17  (indicating the General Wage Decision was modified at least three times between September 16, 2011 and December 23, 2011).

Further, the General Wage Decision is inadmissible for the purpose of analyzing the payroll records, as Declarant Jones does not purport to have personal knowledge that it was used to calculate Plaintiffs' payroll:  her testimony is that she is "currently employed by TrueBlue, Inc. as the Prevailing Wage Supervisor," but there is no information regarding her duties and responsibilities for CLP employees at any time before January 3, 2014.

Further, it does not appear that Defendant CLP has properly calculated the overtime payments pursuant to the Davis-Bacon Act.  Under the Davis-Bacon Act, 29 CFR §5.32 applies to "Overtime payments."  Here, 29 CFR §5.32 (c)(1) seems particularly relevant to the current case:

(1) . . .  [I]n some cases a question of fact may be presented in ascertaining whether or not a cash payment made to laborers or mechanics is actually in lieu of a fringe benefit or is simply part of their straight time cash wage. In the latter situation, the cash payment is not excludable in computing overtime compensation. Consider the examples set forth in paragraphs (c)(2) and (3) of this section.

(2) The X construction contractor has for some time been paying $3.25 an hour to a mechanic as his basic cash wage plus 50 cents an hour as a contribution to a welfare and pension plan. The Secretary of Labor determines that a basic hourly rate of $3 an hour and a fringe benefit contribution of 50 cents are prevailing. The basic hourly rate or regular rate for overtime purposes would be $3.25, the rate actually paid as a basic cash

wage for the employee of X, rather than the $3 rate determined as prevailing by the Secretary of Labor.

29 CFR §5.32 (c)(1).

As noted above, the Davis-Bacon Act states that when "a question of fact" is presented "the cash payment [for fringe benefits] is not excludable in computing overtime compensation." 29 CFR §5.32 (c)(1). As noted in the almost identical example in CFR §5.32 (c)(2) above, the overtime calculations presented by Defendant should utilize the "Rate" on the paystub, not the alleged "prevailing wage" claimed by CLP.

**F.      CLP Has Not Demonstrated It Is a Davis-Bacon Act Contractor or Subcontractor**

As state previously, the Davis-Bacon Act covers certain, specific contracts in which the Federal Government is a party "for construction, alteration, or repair, including painting and decorating of public buildings or public works of the Government," which requires or involves the employment of laborers or mechanics. Such contracts contain provisions for *minimum* wages to be paid to various classes of laborers and mechanics. *See* 40 U.S.C. § 3142 (a). For Defendant CLP to be established as a "contractor" or "subcontractor" operating under the Davis-Bacon Act, it must produce the relevant contract documents, or at least explain why it has not offered them in evidence. See Fed. R. Evid. 1002; Robertson v. M/S Sanyo Maru, 374 F.2d 463 (5th Cir. 1967) (the very purpose of rules requiring production of original writings or excuses for their nonproduction is to secure most reliable information as to contents of documents when terms are disputed; purpose of best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing).

In this case, Defendant CLP is offering no contract or writing indicating that it a contractor or subcontractor under the Davis-Bacon Act. Defendant only offers general testimony alleging that the AVSR1 project is presently a Davis-Bacon "jobsite." Jones Decl., ¶¶5-6. However, the Davis-Bacon Act does not authorize "jobsites" to operate under its rules. See 29 CFR §5.2 (h) and §5.5 (a). Further, a "jobsite" cannot be a party

to a contract for it is not a competent legal entity.  <u>See</u> Cal. Civil Code section 1549 ("A contract is an agreement to do or not to do a certain thing.") <u>Robinson v. Magee</u>, 9 Cal. 81, 83 (1858) ("A contract is a voluntary and lawful agreement, by competent parties, for a good consideration, to do or not to do a specified thing").

The law is clear that if Defendant CLP is alleging that it has a contract to operate under the Davis-Bacon Act, then it should produce the contract, rather than provide generic government websites that do not even mention it.  Absent production of the alleged contracts, this Court should disregard CLP claims that it is operating under the Davis-Bacon Act.

## IV.   CONCLUSION

This Court should deny the Motion, and pursuant to Fed. R. Civ. Proc. 56(g).  find that (1) Defendant CLP has failed to include "all applicable hourly rates in effect during the pay period" on its wage statements, as required by Ca. Lab. Code §226(a)(9), and (2) the correct information may not be "promptly and easily determine[d] from the wage statement alone," as required by Ca. Lab. Code §226(e)(2)(B).  In lieu of denying the Motion, Plaintiffs should be permitted to engage in the discovery outlined in Paragraph 23 of the Harris Declaration filed herewith, as authorized by Rule 56(d) of the Federal Rules of Civil Procedure.

DATED:  January 13, 2014

Respectfully submitted,

HARRIS & RUBLE

    /s/   *Alan Harris*

Alan Harris
*Attorneys for Plaintiffs*

PLS.' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT CV12-8080 GW